GOODWIN, Circuit Judge:
 

 Edward M. Walsh, trustee in bankruptcy of the estate of Edward R. FitzSimmons, appeals from a decision of the Bankruptcy Appellate Panels of the Ninth Circuit.
 

 Edward FitzSimmons is an attorney who operates as a sole proprietorship a law practice known as “Law Offices of Edward R. FitzSimmons.” The practice employs other attorneys, along with various other staff members. In July of 1980, FitzSimmons filed a voluntary petition in the United States Bankruptcy Court for the Northern District of California seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101
 
 et seq.
 

 At first, FitzSimmons was debtor-in-possession of his entire estate, including his law practice. The Bankruptcy Court subsequently appointed Walsh trustee of Fitz-Simmons’ estate, with the exception of his law practice, and entered an order regulating FitzSimmons’ operation of the law practice. This order allowed FitzSimmons to continue to operate the law practice as debtor-in-possession on behalf of the estate, subject to various restrictions. It permitted FitzSimmons to pay himself a salary of $3,500 per month out of the funds of the law practice and required him to remit to the Trustee at the end of each month all funds of the law practice in excess of $15,-000. The order also directed FitzSimmons to pay over to the trustee any compensation that the practice might receive from the
 
 *1210
 
 case of
 
 In re Alexis M. Yermakov,
 
 No. 80-00896-CA (Bankr.C.D.Calif., filed February 4, 1980) a matter in which FitzSim-mons expected to receive compensation under a contingent fee arrangement.
 
 [1]
 

 After unsuccessfully moving for modification of the Bankruptcy Court’s order, FitzSimmons appealed to the Bankruptcy Appellate Panels of the Ninth Circuit. A panel reversed the Bankruptcy Court’s order, one judge dissenting, “insofar as it holds that post-bankruptcy earnings from services performed by an individual debtor are property of the estate in a Chapter 11 case.” 20 B.R. 237, 240 (Bkrtcy.App.Cal. 1982). Trustee Walsh has appealed the panel’s decision to this court. We have jurisdiction under § 405(c)(2) of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549, 2685 (1978).
 

 When FitzSimmons filed his petition for bankruptcy relief, an estate was created. 11 U.S.C. § 541(a). This estate comprises the property that will ultimately be available to satisfy the costs of bankruptcy administration and pay off the claims of creditors, subject to the right of the debtor to declare some of the estate exempt under 11 U.S.C. § 522(b). The scope of the estate is broad: it includes, with two minor exceptions, “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). Section 541 goes on to include in the estate “[pjroceeds, product, offspring, rents, and profits of or from property of the estate,” subject to one important limitation: “except such as are earnings from services performed by an individual debtor after the commencement of the case.” 11 U.S.C. § 541(a)(6). This case requires us to determine the scope of the earnings exception contained in § 541(a)(6).
 

 FitzSimmons contends that since he operates his law practice as a sole proprietorship, all of the earnings generated by the practice are “earnings from services performed by an individual debtor” and fall within the earnings exception. The trustee contends that all the earnings of the practice belong to the estate, and that FitzSim-mons is entitled to only the salary that the bankruptcy court allowed him.
 

 To arrive at a proper construction of § 541(a)(6), we consider its interrelationship with the other provisions of the Bankruptcy Code. Chapter 11 seeks to preserve a foundering business as a going concern, because the assets of a business are often more valuable when so maintained than they would be when liquidated. The purpose of Chapter 11, therefore, is to restructure a business’ debts so that the business may continue to operate.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 220 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6179. To this end, § 1108 authorizes the trustee (or the debtor in possession,
 
 see
 
 § 1107) to operate the debtor’s business during the course of the bankruptcy proceedings. Operation of the business is the rule, not the exception, in a Chapter 11 case. H.R.Rep.,
 
 supra,
 
 at 404; 1978 U.S. Code Cong. & Ad.News at 6360.
 

 The trustee essentially argues that the authority to operate the debtor’s business contained in §§ 1107 and 1108 overrides the § 541(a)(6) earnings exception in Chapter 11 cases. In his view, §§ 1107 and 1108 entitle the estate, and not the debtor, to all proceeds from the operation of the debtor’s business, even if those proceeds were generated by the services of an individual debtor. The trustee maintains that an individual debtor-in-possession such as FitzSimmons, who operates his business on behalf of the estate, is entitled only to whatever salary the estate or the bankruptcy court allocates to him.
 

 We cannot accept the trustee’s position because the Bankruptcy Code applies § 541(a)(6) in Chapter 11 cases. Section 103 of the Bankruptcy Code states that the provisions of Chapter 5 of the Code, which includes § 541, apply to cases brought under Chapters 7, 11 and 13. As the opinion for the Bankruptcy Appellate Panels points
 
 *1211
 
 out, 20 B.R. at 239, Congress knew how to override this general applicability of § 541(a)(6) when it wanted to do so. For example, Code § 1306 removes the earnings exception from Chapter 13 cases by providing that:
 

 (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
 

 Ht
 
 :je s{: s}s sjs
 

 (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first.
 

 If Congress had intended to make the earnings exception inapplicable to Chapter 11 cases, we believe that it would have done so explicitly, as it did in § 1306.
 

 Although we hold that the earnings exception of § 541(a)(6) does apply to Chapter 11 cases, FitzSimmons overstates the effect of that exception. Once again, consideration of the provisions of Chapter 11 of the Bankruptcy Code aids us in arriving at our construction of § 541(a)(6). We hold that the earnings exception applies only to services performed
 
 personally
 
 by an individual debtor, because giving the exception the broader scope that FitzSimmons urges would seriously interfere with the continued operation of a sole proprietorship during the course of a Chapter 11 case.
 

 Businesses operated as sole proprie-torships are eligible for Chapter 11 relief.
 
 See
 
 11 U.S.C. §§ 109(d), 101(30);
 
 In re Noo-nan,
 
 17 B.R. 793, 799 (Bkrtcy.S.D.N.Y.1982);
 
 cf.
 
 H.R.Rep. 595,
 
 supra,
 
 at 320; 1978 U.S. Code Cong, & Ad.News at 6277. FitzSim-mons’ reading of the earnings exception would effectively preclude operation of sole proprietorships under Chapter 11. His contention that all the earnings of a sole proprietorship constitute “earnings from services performed by an individual debtor” and are excluded from the estate means that the estate—and the creditors who look to the estate for satisfaction of their claims—would not enjoy the benefit of any profits earned by a sole proprietorship operated under Chapter 11. This contrasts with the situation that prevails when the debtor business is a partnership or a corporation. In those cases, there is no “individual debt- or” so the earnings exception is not applicable and the earnings of the business all accrue to the estate under § 541(a)(6). At the same time, although FitzSimmons maintains that the estate should not enjoy the profits earned by a sole proprietorship operated under § 1108, any losses suffered by such a sole proprietorship would be borne by the estate, since such losses would reduce the value of the estate’s assets.
 

 We do not believe that Congress intended such an anomalous result. To avoid it, we hold that § 541(a)(6) excepts from the proceeds of the estate only those earnings generated by services personally performed by the individual debtor. FitzSim-mons is thus entitled to monies generated by his law practice only to the extent that they are attributable to personal services that he himself performs. To the extent that the law practice’s earnings are attributable not to FitzSimmons’. personal services but to the business’ invested capital, accounts receivable, good will, employment contracts with the firm’s staff, client relationships, fee agreements, or the like, the earnings of the law practice accrue to the estate.
 

 Our interpretation accords with the plain meaning of the language of § 541(a)(6). The section speaks only of “services performed by an
 
 individual
 
 debtor,” (emphasis added), reinforcing our conclusion that it excepts only earnings from services personally performed by an individual debtor, since the services of a debtor’s employee or return on capital are not services of the individual debtor himself.
 

 In this case, the Bankruptcy Court’s order permitted FitzSimmons to retain a salary of $3,500 per month. We affirm the Bankruptcy Appellate Panels’ reversal of that order because it is not evident that $3,500 per month constitutes those proceeds of FitzSimmons’ law practice that were attributable to the services personally rendered
 
 *1212
 
 by FitzSimmons himself. The value of FitzSimmons’ services may have been higher — or lower — than $3,500 per month. On remand, the Bankruptcy Court should ascertain the portion of the law practice’s earnings that were attributable to FitzSim-mons’ personal efforts and exclude that amount from the bankruptcy estate. The practice’s earnings from all other sources belong to the estate.
 

 FitzSimmons argues that the Bankruptcy Court improperly failed to determine whether the contingent fee in the
 
 Yerma-kov
 
 case would, if paid, be his property or the property of the estate. We do not consider this argument because FitzSim-mons has not properly brought it before us.
 

 When it denied the motion to alter or amend the order regarding FitzSimmons’ law practice, the Bankruptcy Court reached two conclusions. First, all earnings of Fitz-Simmons’ law practice belong to the estate, whether they were generated before or after the bankruptcy petition was filed, and whether they were generated by FitzSim-mons’ personal services or those of his employees. . Second, any compensation awarded to FitzSimmons’ practice in the
 
 Yerma-kov
 
 case would belong to the estate. Fitz-Simmons appealed the entire order to the Bankruptcy Appellate Panels of the Ninth Circuit, thereby seeking review of both of these conclusions. The Bankruptcy Appellate Panels reversed the decision of the Bankruptcy Court
 
 “insofar
 
 as it holds that post-bankruptcy earnings from services performed by an individual debtor are property of the estate in a Chapter 11 case.” 20 B.R. at 240 (emphasis added). We read this to mean that the Bankruptcy Appellate Panels reversed only the first part of the Bankruptcy Court’s decision and tacitly affirmed the rest of the decision, which held that the
 
 Yermakov
 
 fee belonged to the estate. Fitz-Simmons did not appeal the decision of the Bankruptcy Appellate Panels and therefore cannot attack it now.
 
 Helvering v. Pfeiffer,
 
 302 U.S. 247, 250, 58 S.Ct. 159, 160, 82 L.Ed. 231 (1937).
 

 The decision of the Bankruptcy Appellate Panels is affirmed. The cause is remanded to the Bankruptcy Court for calculation of the amount of earnings of FitzSimmons’ law practice that are attributable to services personally performed by FitzSim-mons.
 

 [1]
 

 . FitzSimmons’ right to a contingent fee in
 
 Yer-makov
 
 has also been the subject of litigation in this court.
 
 See In re Yermakov,
 
 718 F.2d 1465 (9th Cir.1983).